UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| MELVIN A. MCCABE,<br><br>                    Plaintiff,<br><br>v.<br><br>JANEECE GONZALES<br>individually and in her official capacity<br>as a Jerome City Police patrol officer,<br><br>                    Defendant. | Case No. 1:13-cv-00435-CWD<br><br>**MEMORANDUM DECISION AND<br>ORDER** |

Two motions are pending before the Court in this civil rights action filed by pro se

Plaintiff Melvin McCabe. First, Defendant Janeece Gonzales filed a motion for summary

judgment on all claims asserted against her in McCabe's Amended Complaint.[1] (Dkt. 36.)

Second, McCabe filed a Motion for Order Holding Parties in Contempt of This Court's

Subpoena, which contends the Jerome City Police Department and the Jerome City

Police Dispatch failed to adequately respond to a subpoena duces tecum served on March

5, 2015. (Dkt. 41.)

---

[1] In its May 7, 2014 Order reviewing McCabe's Amended Complaint, the Court determined McCabe could not proceed on his claims against the Chief of Police of Jerome City or his claims under the Idaho criminal code. (Dkt. 16.)

**MEMORANDUM DECISION AND ORDER - 1**

All parties have consented to the jurisdiction of a United States Magistrate Judge. (Dkt. 23.) In the interest of avoiding delay, and because the Court conclusively finds the decisional process would not be significantly aided by oral argument, the pending motions will be decided on the record without oral argument. Dist. Idaho L. Rule 7.1(d). For the reasons that follow, the Court concludes there is no genuine dispute as to any material fact and that Gonzales is entitled to judgment as a matter of law. Accordingly, the Court enters the following disposition and will grant Gonzales's motion and deny McCabe's motion as more fully explained below.

## MOTION FOR SUMMARY JUDGMENT (DKT. 36)

### I. Factual Background[2]

On December 31, 2011, at approximately 2:30 p.m., Defendant, Officer Janeece Gonzales, observed a Dodge Dakota pickup truck travelling southbound on South Lincoln in Jerome, Idaho.[3] Gonzales noticed the vehicle's rear license plate was obstructed by a trailer ball hitch and stopped the vehicle. Gonzales believed the trailer ball hitch's obstruction of the license plate was a violation of I.C. § 49-428(2), which provides in relevant part: "every license plate shall at all times . . . be in a place and position to be clearly visible." Although McCabe concedes the rear license plate was not clearly visible from Gonzales's vantage point, he alleges a slight change of view would

---

[2] The facts contained in this section are undisputed unless otherwise indicated. When the facts are disputed, they are taken in the light most favorable to McCabe, the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (recognizing the district court's obligation to construe the record in the light most favorable to the nonmoving party on motion for summary judgment).

[3] Plaintiff contends that this was not the first time Defendant observed the vehicle. He asserts the Defendant "had the opportunity of observing the front license plate of the vehicle" moments before, when the vehicle passed Defendant at a nearby corner. (Dkt. 40.)

**MEMORANDUM DECISION AND ORDER - 2**

have enabled Gonzales to read the license plate in its entirety. *See Response to Summary Judgment* (Dkt. 40. at 8) ("From the perspective of the still shot from the video footage of the patrol vehicles dash cam, it becomes obvious that the license plate was not clearly visible from a standing-still position.").

McCabe was a passenger in the vehicle; his friend, Wesley Roehl, was the driver. Once Gonzales approached the vehicle, she noticed that Roehl was acting nervous and he admitted that he did not have a valid driver's license. Roehl was trembling, blurting out profanities, and unable to sit still. When asked by Gonzales if he was okay, Roehl replied that he did not like law enforcement because every time he encountered them they arrest him, and that he was or had been on probation for a controlled substance offense. Based on his unusual behavior, Gonzales asked Roehl whether there was anything illegal in the vehicle; he responded "no," and offered for Gonzales to search the vehicle. Roehl also told Gonzales that McCabe had a valid driver's license and offered to let McCabe drive the car. Gonzales asked for McCabe's driver's license to confirm its validity.

Gonzales retreated to her patrol car and confirmed through dispatch that Roehl's driver's license was suspended and McCabe's was valid. She also confirmed Roehl was the registered owner of the pickup. S*ee Hall Aff.* (Dkt. 36-17); *see also See* Idaho Dept. Transportation Records Search (Dkt. 36-17).[4] Gonzales called for a backup officer to assist her with a consent search of the vehicle.

---

[4] Though McCabe concedes Roehl was the registered owner of the vehicle, McCabe argues he owned the vehicle because he was in possession of a valid "bill of sale" at the time of the stop. *See Response Opposing Summary Judgment (*Dkt. 40 at 2, no.1.) This "bill of sale" was neither attached as an exhibit to McCabe's Amended Complaint nor to his response to Gonzales's motion for summary judgment.

**MEMORANDUM DECISION AND ORDER - 3**

When Gonzales returned to the vehicle, McCabe asserts Gonzales asked him if he would be willing to drive the vehicle, to which he responded, "yes." Gonzales reminded Roehl he provided permission for Gonzales to search the vehicle. Roehl again consented. Gonzales requested that both Roehl and McCabe exit the vehicle so she could search it. The backup officer who arrived on scene asked for McCabe's permission before patting him down for weapons; McCabe consented to the pat down. At that time, no weapons were found and no property was seized.

Gonzales conducted the search of the vehicle and located a sunglasses case with several Ziploc baggies adorned with black spade symbols, which contained Q-tips, inside the case. The case was located directly behind the passenger seat. Gonzales noticed a white powdery residue in one of the baggies, which she believed to be methamphetamine. Both McCabe and Roehl denied ownership of the sunglasses case. At that time, Gonzales informed McCabe and Roehl that they were no longer free to leave because she had located what she believed to be an illegal substance. She then tested the substance with a field drug test and the results showed a presumptive positive for the presence of methamphetamine or ecstasy. Gonzales arrested both McCabe and Roehl for possession of a controlled substance. Prior to placing McCabe in the police vehicle, Gonzales searched and seized $680.00 cash from his outer left pocket. The Dodge Dakota pickup truck was later towed and impounded. *See* Hall Aff. (Dkt. 36-8.)

As McCabe's criminal case was pending at the local county court regarding the events above, the prosecuting attorney assigned to McCabe's case learned in February 2012,  a judge in Twin Falls County, ruled a trailer ball hitch was not an obstruction

under Idaho Code § 49-428(2). *See State v. Johnson*, Twin Falls County Case No. CR-2011-5605 ,slip op. at ___ (5th D. Idaho Feb. 21, 2012). The prosecutor in McCabe's case then consented to the entry of a suppression order and dismissal of the criminal prosecution against McCabe. *See* Motion to Suppress (Dkt. 40-5.)

Based on the above facts, McCabe's Amended Complaint alleges five constitutional violations of the Fourth Amendment under 42 U.S.C. § 1983 (challenging the reasonable suspicion for the traffic stop, consent to search vehicle, probable cause to arrest, false arrest, and seizure of the pickup truck and cash found in his pocket); one violation of search exceeding the scope of consent to search the vehicle pursuant to Idaho Const. Art. I, § 17 and Idaho Code §§ 18-703 and 18-711; and two violations of unlawful seizure of property without compensation pursuant to Idaho Const. Art. I, §§ 17, 14, 18. Gonzales seeks summary judgment on all of McCabe's claims.

## II. Summary Judgment Standard

Federal Rule of Civil Procedure 56 directs the court to "grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Critically, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "A dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *FreecycleSunnyvale v.*

*Freecycle Network*, 626 F.3d 509, 514 (9th Cir. 2010) (quoting *Anderson*, 477 U.S. at 248).

"The moving party initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Secs. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial." *Id.* "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for the purposes of the motion." Fed. R. Civ. P. 56(e)(2).

## III. Discussion

### A. McCabe's Constitutional Claims

In his Amended Complaint, McCabe alleges a slew of Fourth Amendment violations pursuant to Section 1983, challenging the reasonable suspicion of the traffic stop, the consent search of the vehicle, the probable cause for his arrest, false arrest, and the seizure of his property. In her motion for summary judgment, Gonzales challenges each claim and contends that no constitutional violations occurred or she is otherwise protected from liability by the doctrine of qualified immunity.

#### 1. Section 1983 and Qualified Immunity

To state a valid claim under Section 1983, a plaintiff must allege that a person acting under color of state law violated his rights protected by the Constitution or created by a federal statute. *Crumpton v. Gates,* 947 F.2d 1418, 1420 (9th Cir.1991). In Section

**MEMORANDUM DECISION AND ORDER - 6**

1983 actions, the doctrine of qualified immunity protects state officials from personal liability for on-the-job conduct so long as the conduct is objectively reasonable and does not violate clearly-established federal rights. *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).

To determine whether an officer is entitled to qualified immunity, the court analyzes: (1) whether the facts alleged by plaintiff establish a violation of a constitutional right, and (2) whether that right was clearly established given the state of the law at the time of the alleged misconduct. *Pearson v. Callahan,* 555 U.S. 223, 232 (2009) (citing *Saucier v. Katz,* 533 U.S. 194, 201, 121 (2001)). Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236.

As to the first prong, the court considers whether, "[t]aken in the light most favorable to the party asserting the injury . . . the facts alleged show the [defendant's] conduct violated a constitutional right[.]" *Saucier,* 533 U.S. at 201.

As to the second prong—whether the law was clearly established—such inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier,* 533 U.S. at 201. The Court must consider the "objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Pearson,* 555 U.S. at 244 (quoting *Wilson v. Layne,* 526 U.S. 603, 614 (1999)). If the public official can demonstrate she did not know, nor should she have known, the relevant legal standard, then qualified immunity applies.

**MEMORANDUM DECISION AND ORDER - 7**

*Harlow,* 457 U.S. at 819. Plaintiff bears the burden of establishing the rights violated

were "clearly established." *Houghton v. South,* 965 F.2d 1532, 1534 (9th Cir.1992).

### 2. Traffic Stop

McCabe's challenge to the traffic stop is brought pursuant to 42 U.S.C. § 1983.

Specifically, he contends that Gonzales violated his Fourth Amendment right to be free

from unreasonable seizure because Gonzales initiated the traffic stop without reasonable

suspicion. Gonzales asserts that she did have reasonable suspicion to initiate the traffic

stop, but even if she did not, she is otherwise protected from liability by the doctrine of

qualified immunity.

Because the first step of qualified immunity—determining whether a

constitutional violation occurred—overlaps with the merits of McCabe's claim—that

Gonzales violated McCabe's  Fourth Amendment right—the Court will proceed through

the qualified immunity analysis.[5]

McCabe alleges, in conducting the traffic stop without reasonable suspicion,

Gonzales violated his Fourth Amendment right to be free from unreasonable seizure. U.S.

Const. amend. IV. "A traffic stop for a suspected violation of law is a 'seizure' of the

occupants of the vehicle and therefore must be conducted in accordance with the Fourth

Amendment." *Heien v. North Carolina*, 135 S. Ct. 530, 535-36 (2014) (citing *Brendlin v.

California*, 551 U.S. 249, 255-59 (2007)). To justify this type of seizure, officers need

"reasonable suspicion." *Navarette v. California*, 134 S. Ct. 1683, 1687 (2014). Put

---

[5] The Fourth Amendment right to be free from unreasonable search and seizure is a clearly established right, thus it is unnecessary for the Court to continue its analysis under the second prong of qualified immunity.

another way, the officer must possess a "particularized and objective basis for suspecting the particular person stopped of criminal activity." *Id*. (quoting *United States v. Cortez*, 449 U.S. 411, 417-18 (1981).

"[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness'" *Riley v. California*, 134 S. Ct. 2473, 2482 (2014) (some internal quotation marks omitted). "To be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on part of government officials, giving them 'fair leeway for enforcing the law in the community's protection.'" *Heien*, 135 S. Ct. at 536 (citing *Brinegar v. United States,* 338 U.S. 160, 176 (1949)). The Supreme Court of the United States has recognized that reasonable suspicion can rest on an officer's mistake of the law. *See Id.* However, "[t]he Fourth Amendment tolerates only *reasonable* mistakes, and those mistakes—whether of fact or of law—must be *objectively* reasonable." *Id*. at 539. The Court does not "examine the subjective understanding of the particular officer involved." *Id.*  (emphasis in original).

The following facts are not in dispute: (1) McCabe was a passenger in the Dodge Dakota pickup driven by Roehl; (2) some digits of the rear license plate of the pickup truck were blocked by its rear trailer ball hitch; (3) Gonzales believed that a license plate's obstruction by a trailer ball hitch violated Idaho Code § 49-428(2), which requires licenses plates to be both clearly visible and legible; and (4) Gonzales initiated the traffic stop pursuant to that belief. To initiate the traffic stop, Gonzales must have reasonable suspicion of a traffic violation. Construing all the facts in McCabe's favor, the Court

concludes there are no disputed facts upon which a reasonable jury could find Gonzales lacked reasonable suspicion to initiate the traffic stop.

Further, it is undisputed that no clearly established Idaho appellate law addressing the underlying basis for Gonzales's reasonable suspicion as it relates to Idaho Code § 49-428(2) was in existence at the time of the traffic stop. Because reasonable suspicion to conduct a traffic stop may be established by an officer's reasonable mistake of the law, the Court need only determine whether Gonzales's mistaken interpretation of the law, if she made one, was reasonable.

Idaho Code § 49-428(2) provides in relevant part:

> Every license plate shall *at all times* be securely fastened to the vehicle to which it is assigned to prevent the plate from swinging, be at a height not less than twelve (12) inches from the ground, measuring from the bottom of the plate, be in a place and *position to be clearly visible, and shall be maintained free from foreign materials and in a condition to be clearly legible,* and all registration stickers shall be securely attached to the license plates and shall be displayed as provided in section 49-443(4), Idaho Code.

(emphasis added).

Gonzales argues it is objectively reasonable to believe two license plate digits obstructed by a trailer ball hitch renders a license plate neither clearly visible nor clearly legible. McCabe, on the other hand, argues that such an interpretation is unreasonable and would lead to an absurd result because, according to McCabe, many Idaho residents have a trailer ball hitch attached to their vehicle and thus, would be susceptible to a traffic stop based on nothing more.

The parties point to two conflicting state law cases, both of which address whether a trailer ball hitch's obstruction of a license plate violates Idaho Code § 49-428(2). First,

**MEMORANDUM DECISION AND ORDER - 10**

in 2009, the Idaho Kootenai County court concluded a trailer ball hitch's obstruction of a license plate was a violation of the statute. *See State v. Jensen*, Kootenai County Case No. CRF 20065254, slip op. at ___ (1st D. Idaho Feb. 20, 2009).[6] To the contrary, in 2012, the Twin Falls County court concluded that a trailer ball hitch was not the type of obstruction the statute intended to prohibit. *See State v. Johnson*, Twin Falls County Case No. CR-2011-5605, slip op. at ___ (5th D. Idaho Feb. 21, 2012). The judge assigned to McCabe's criminal case in Jerome County found this Twin Fall County decision persuasive when granting McCabe's motion to suppress. Nonetheless, these two trial court level decisions illustrate a difference in opinion regarding the interpretation of Idaho Code § 49-428(2) and supports the Court's conclusion that the law regarding obstruction of a license plate by a trailer ball hitch was not clearly established at the time Gonzales conducted the traffic stop at issue in this case.

The Court concludes Gonzales's interpretation of the Idaho statute, even if mistaken, was reasonable. Though the statute makes no express mention of whether a trailer ball hitch's obstruction of a license plate is the type of obstruction the statute intended to encompass, without controlling Idaho appellate authority in existence at the time of the stop, it is reasonable to conclude that such an obstruction could constitute a violation of Idaho Code § 49-428(2). *See Heien*, 135 S.Ct. at 535 (demonstrating that reasonable minds could differ as to the meaning of a statute).

---

[6] Though this decision was in existence at the time of the stop, the record does not indicate that Gonzales was aware of the existence of this particular case or should have been aware of it.

**MEMORANDUM DECISION AND ORDER - 11**

Accordingly, the Court finds Gonzales had reasonable suspicion to conduct the traffic stop. Even if Gonzales's interpretation of Idaho Code § 49-428(2) was mistaken, her interpretation was nonetheless reasonable. Therefore, Gonzales is entitled to qualified immunity and Gonzales's motion for summary judgment will be granted with regard to the constitutionality of the traffic stop.

### 3. Consent to Search

McCabe also challenges the consent search of the vehicle pursuant to 42 U.S.C. § 1983. Specifically, he contends that Gonzales violated his Fourth Amendment right to be free from an unreasonable search because Gonzales did not obtain McCabe's consent, in addition to the consent of the driver, to search the vehicle. Gonzales alleges that it was unnecessary to obtain McCabe's consent, and alternatively raises the defense of qualified immunity if the Court were to find that a constitutional violation occurred. The Court agrees with Gonzales and concludes Gonzales did not violate McCabe's right to be free from an unreasonable search.

In automobile searches, consent to search can be authorized by those with actual authority, usually a present owner or driver of the vehicle. *See United States v. Villa-Gonzales*, 32 F. App'x 201, 202 (9th Cir. 2002) (the owner of a vehicle may voluntarily consent to the search of the vehicle); *see also United States v. Villanueva-Madriz*, 234 F.App'x 454, 455 (9th Cir. 2007) (the driver of a vehicle may provide consent to search it). Further, an officer's "reasonable yet mistaken belief that an individual has authority to consent to a search does not violate the Fourth Amendment." *United States v. Buckles*, 137 F.App'x 950, 952 (9th Cir. 2005) (citing *Illinois v. Rodriguez*, 497 U.S. 177, 186-87

**MEMORANDUM DECISION AND ORDER - 12**

(1990)). "Under the apparent authority doctrine, a search is valid if …the officers who conducted it reasonably believed that the person from whom they obtained consent had the actual authority to grant that consent." *Id.*

The following facts are undisputed: (1) Roehl was the driver of the vehicle at the time of the stop; (2) Roehl offered Gonzales the opportunity to search the vehicle; (3) Gonzales confirmed Roehl was the registered owner of the vehicle and that his driver's license was invalid; (4) Roehl offered to let McCabe to drive the vehicle; (5) Gonzales confirmed McCabe's license was valid; and (6) Gonzales later reminded Roehl that he offered Gonzales to search the vehicle, and Roehl confirmed his consent.

McCabe alleges that, once Gonzales "surrendered" the car for him to drive, she needed his consent to search the vehicle, which she did not obtain. He also asserts it was necessary for Gonzales to obtain his consent because he was the valid owner of the vehicle because he was in possession of a "bill of sale" at the time of the stop. Construing all facts in McCabe's favor, the Court concludes there are no disputed facts upon which a jury could reasonably find that Gonzales needed McCabe's consent to search the vehicle.

Roehl had actual authority to authorize consent to search the vehicle. When Gonzales initiated the traffic stop, Roehl was the driver of the vehicle. When she ran his license, Gonzales confirmed Roehl was the registered owner of the vehicle. A present driver and owner of the vehicle can provide consent to search. *See Villa-Gonzales*, 32 F.App'x at 202; *see also Villanueva-Madriz*, 234 F.App'x at 455.

Moreover, when Gonzales "surrendered" the vehicle for McCabe to drive, it was unnecessary for her to obtain additional consent from McCabe. Regardless of whether

**MEMORANDUM DECISION AND ORDER - 13**

McCabe was in possession of a "bill of sale" of the vehicle at the time of the stop, Roehl was still the registered owner—Gonzales had no reason to believe that someone other than Roehl owned the vehicle.[7] Because the owner of a vehicle has authority to provide consent to search, there was no reason for Gonzales to obtain additional consent from McCabe. Accordingly, Roehl's consent to search the vehicle was valid. Construing all facts in favor of McCabe, the Court concludes that no genuine issue of material fact exits upon which a reasonable jury could conclude it was necessary for Gonzales to obtain McCabe's consent prior to searching the vehicle.

Because McCabe cannot establish that a constitutional violation occurred, his Section 1983 claim fails. Therefore, the Court need not address Gonzales's qualified immunity defense on this claim and Gonzales's motion for summary judgment on McCabe's claim with respect to the consent to search will be granted.

### 4. Arrest

McCabe challenges his arrest pursuant to 42 U.S.C. § 1983. Specifically, he contends Gonzales violated his Fourth Amendment right when she arrested him without probable cause. Gonzales asserts she had probable cause to arrest McCabe and alternatively raises the defense of qualified immunity. The Court agrees with Gonzales and concludes there is no genuine issue of material fact upon which Gonzales based her probable cause to arrest McCabe.

---

[7] Nothing in the record indicates that McCabe told Gonzales that he was the owner of the vehicle at the time of the stop.

**MEMORANDUM DECISION AND ORDER - 14**

A warrantless arrest is constitutional if, "at the moment the arrest was made, the officer had probable cause to make it." *Beck v. State of Ohio*, 379 U.S. 89, 91 (1964). "[P]robable cause is a flexible, common-sense standard. It merely requires that the facts available to the officer would 'warrant a man of reasonable cause in the belief,' that certain items may be contraband…it does not demand any showing that such a belief be correct or more likely true than false." *Texas v. Brown*, 460 U.S. 730, 742 (1983) (quoting *Carroll v. United States*, 267 U.S. 132, 162 (1925)). "A practical, nontechnical probability that incriminating evidence is involved is all that is required." *Id.* (internal quotations omitted). In addition, it has been recognized "that a law enforcement officer may rely on his training and experience to draw inferences and make deductions that might well elude an untrained person." *Id.* at 746 (Powell, J., concurring) (citing *Cortez*, 449 U.S. at 419.). Such inferences may be used to support a finding of probable cause. *Id.*

Further, probable cause to arrest exists if the officer reasonably believes a passenger in a vehicle is involved in illegal activity. *United States v. Heiden*, 508 F.2d 898, 901 (9th Cir. 1974).  The passenger doctrine, which otherwise requires the government to prove the passenger has some relationship to the illegal activity found inside the vehicle to support a conviction, does not apply to arrests. *Bettis v. U.S.*, 408 F.2d 563, 567-68 (9th Cir. 1969).  The fact that a passenger "could later establish that he was only a passenger and did not know about the [illegal substance found in the car]" is no reason for an officer to let a passenger go free. *Heiden*, 508 F.2d at 901.

The following facts are undisputed: (1) Roehl was the driver and McCabe was the passenger in the vehicle at the time of the stop; (2) Gonzales conducted a consent search

of the vehicle; (3) behind the passenger seat, Gonzales found a sunglasses case with Ziploc baggies inside; (4) one of the baggies had a white powdery residue inside; (5) Gonzales suspected the white powdery residue was an illegal substance; (6) neither Roehl nor McCabe claimed ownership of the sunglasses case; (7) Gonzales conducted a field test of the  residue in the baggie, which yielded a presumptive positive result for either methamphetamine or ecstasy; and (8) Gonzales arrested both Roehl and McCabe.

McCabe alleges that the field drug test result was unreliable and thus, insufficient to support a finding of probable cause for his arrest. Alternatively, he alleges that his denial of ownership of the sunglasses case and his inability to reach it from his position in the vehicle precluded a finding of probable cause for his arrest. Construing all facts in favor of McCabe, the Court nevertheless concludes McCabe's arguments do not create a genuine issue of material fact upon which a jury could find lack of probable cause.

The Court finds the undisputed facts support Gonzales's probable cause to believe that the white powdery residue was in fact an illegal substance. Gonzales testified in her sworn affidavit that, from her training and experience in law enforcement, she had reason to believe the white powdery residue was a controlled substance consistent with methamphetamine. Her experience is corroborated by the presumptive positive field drug test, which identified that the substance was either methamphetamine or ecstasy. The fact that the field drug test could have produced a false positive, as McCabe contends, is irrelevant; probable cause does not require certainty so long as an officer reasonably believes that the substance in question is illegal. Here, the Court finds a reasonable

officer could conclude the white powdery residue found in the vehicle was an illegal substance.

Further, McCabe's denial of ownership of the sunglasses case and his now alleged inability to reach it from his seat in the vehicle do not alter the facts upon which the probable cause for his arrest was based.[8] Gonzales was not required to believe McCabe's explanation that he did not own the sunglasses case or he was unaware it contained an illegal substance. Whether McCabe could later establish that he not know about the methamphetamine does not obviate the probable cause for his arrest.

Accordingly, there is no genuine issue of material fact to refute Gonzales's probable cause determination.  McCabe has failed to establish a constitutional violation with regard to his arrest and, thus, he cannot succeed on his Section 1983 claim. Therefore, the Court need not address the qualified immunity defense raised by Gonzales, and summary judgment on McCabe's Section1983 claim with respect to the arrest will be granted.

### 5. False Arrest

In addition to McCabe's Section 1983 claim that he was arrested without probable cause, he also asserts a claim for false arrest.

"Probable cause to arrest or detain is an absolute defense to any claim under § 1983 against officers for wrongful arrest or false imprisonment, as the lack of probable cause is a necessary element of each." *Lacy v. Cnty of Maricopa*, 631 F. Supp. 2d 1183, 1193 (D. Ariz. 2008), *see also Cabrera v. City of Huntington Park*, 159 F.3d 374, 380

---

[8] McCabe does not allege that he told Gonzales he was physically impaired such that he could not reach behind him.

**MEMORANDUM DECISION AND ORDER - 17**

(9th Cir. 1998) ("To prevail on his § 1983 claim for false arrest and imprisonment, [plaintiff] would have to demonstrate that there was no probable cause to arrest him.").

Because the Court finds no disputed facts upon which a jury could reasonably find Gonzales lacked probable cause to arrest McCabe, his claim for false arrest fails also. Accordingly, Officer Gonzales's motion for summary judgment on McCabe's Section 1983 claim with respect to false arrest will be granted.

### 6. Seizure of Property

In his Amended Complaint and response to the motion for summary judgment, McCabe alleges that, because the traffic stop and arrest both violated the Fourth Amendment, the Dodge Dakota pickup truck and $680.00 cash were unlawfully seized. Though Gonzales states in her motion that she is entitled to summary judgment on all of McCabe's claims, she does not present specific arguments for either of the seizures. Nonetheless, because she alleges she is entitled to summary judgment on all claims, the Court will address each below.

### a. $680.00 Cash

"A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification." *United States v. Robinson*, 414 U.S. 218, 235 (1973). Put in other words, "it is the fact of custodial arrest which gives rise to the authority to search." *Id.* at 236. If the search reveals "'fruits, instrumentalities, or contraband' probative of criminal conduct," an officer is entitled to seize it. *Id.* at 236.

**MEMORANDUM DECISION AND ORDER - 18**

Gonzales's search of McCabe's person after his arrest and the seizure of $680.00

cash from his outer pocket did not violate McCabe's Fourth Amendment right to be free

from unreasonable seizure. Because custodial arrest gives rise to authority to search,

Gonzales needed no other justification for the search. The Court concluded above that

McCabe failed to prove his arrest was unconstitutional. Having in the course of a lawful

search come upon a large sum of cash, Gonzales was entitled to seize it as fruits,

instrumentalities, or contraband probative of criminal conduct. *See* Affidavit in Support

of Civil Asset Forfeiture (Dkt. 36-10). Accordingly, no constitutional violation occurred.

Officer Gonzales's motion for summary judgment on McCabe's Section 1983 claim with

respect to seizure of his $680.00 cash will be granted.

### b. Impounded Vehicle

McCabe offers no additional facts to support a finding that the seizure of the

vehicle constituted a constitutional violation on its own—that is, it was unconstitutional

for some independent reason separate from the traffic stop and arrest. The Court

concluded above that McCabe failed to prove that the traffic stop or the arrest was

unconstitutional.[9] Accordingly, summary judgment with regard the seizure of the vehicle

will be granted.

### B. Idaho Constitutional Claims.

McCabe seeks monetary damages and declaratory judgment for alleged violations

of the Idaho Constitution caused by Gonzales. Specifically, he alleges the search of the

---

[9] Other facts, or lack thereof, place additional doubt on McCabe's claim. The record clearly reflects the vehicle was impounded; however, McCabe does not allege Gonzales impounded the vehicle. In addition, even if this Court did find the seizure was unconstitutional, the Court doubts McCabe has standing to bring this claim, as he was not the registered owner of the vehicle at the time of the stop. *See* Idaho Dept. Transportation Records Search (Dkt. 36-17).

**MEMORANDUM DECISION AND ORDER - 19**

Dodge Dakota exceeded the scope of the consent and constituted a violation of his right to be free from unreasonable search and seizure under the Idaho Constitution. He further alleges the seizure of the Dodge Dakota pickup and the $680.00 cash from his pocket violated his right to eminent domain, his right to be free from unreasonable seizure, and his right to be freely and speedily administered. McCabe claims Gonzales's course of conduct led to the unlawful search of his vehicle and seizure of his property.

No direct cause of action exists for violations of the Idaho Constitution. *See Greenfield v. City of Post Falls Municipality*, 2014 WL 1343478 (refusing to recognize private cause of action for monetary damages for violations of equal protection rights under the Idaho Constitution); s*ee also Mott v. City of McCall*, 2007 WL 1430764 *6 (D. Idaho May 14, 2007) (finding no private cause of action for Idaho Constitutional law violation alleged to have occurred as a result of a traffic stop).

Accordingly, McCabe's Idaho Constitutional claims as set forth in his Amended Complaint fail as a matter of law. Gonzales's motion for summary judgment with regard to McCabe's Idaho Constitutional Claims will be granted.

### C. Idaho State Law Claims

Gonzales argues McCabe's state law claims for illegal search and seizure pursuant to Idaho Code § 18-703, and unlawful exercise of functions of police officers pursuant to Idaho Code § 18-711(1),  are precluded due to McCabe's failure to timely file a notice of claim as required by the Idaho Tort Claims Act. *See* Idaho Code § 6-906. Idaho Code § 6-906 provides, "[n]o claim or action shall be allowed against a governmental entity or its employee unless the claim has been presented and filed within the time limits prescribed

**MEMORANDUM DECISION AND ORDER - 20**

by this act." The Tort Claims Act requires the notice of claim to be presented and filed within 180 days from the date the claim arose. Idaho Code §6-906.

The Idaho Supreme Court has held that the filing of a notice of claim as required by the Tort Claims Act is "a mandatory condition precedent to bringing suit, the failure of which is fatal to a claim, no matter how legitimate." *Banks v. Univ. of Idaho*, 798 P.2d 452 (Idaho 1990) (quoting *McQuillen v. City of Ammon*, 747 P.2d 741, 744 (Idaho 1987)). Claims subject to the ITCA include "any written demand to recover money damages from a governmental entity or its employee which any person is legally entitled to recover under this act as compensation for the negligent or otherwise wrongful act or omission of a governmental entity or its employee when acting within the course or scope of his employment." Idaho Code § 6–902(7). A person bringing such a claim against a political subdivision of the state or against any employee thereof is required to file a notice of claim with the clerk or secretary of the political subdivision within 180 days from the date the claim arose or reasonably should have been discovered. Idaho Code § 6–906.

Filed in support of Gonzales's motion for summary judgment is the Affidavit of Jerome County Clerk, Shonna Frasher. The Affidavit states McCabe did not file a tort claim against the City of Jerome between the dates of December 31, 2011 and October 1, 2012. McCabe's affidavit filed in opposition to summary judgment, asserts that his sister filed a notice of claim against the City of Jerome and Gonzales on his behalf. (Dkt. 40-7.) However, McCabe neither attaches the notice, nor provides his sister's affidavit. McCabe's statements regarding his sister's actions and statements are inadmissible as

**MEMORANDUM DECISION AND ORDER - 21**

hearsay and cannot be considered in this motion for summary judgment. *See* Fed. R. Evid

801; Fed. R. Evid. 802; *see also* Fed. R. Civ. P. 56(c)(4) (affidavits must be made on

personal knowledge and must set forth facts that would otherwise be admissible as

evidence). Therefore, the only evidence in the record is the affidavit of the Jerome

County clerk, which satisfies the evidentiary requirement for admissibility of public

records or reports. *See* Fed. R. Evid. 803(10) (certification that a diligent search failed to

disclose the existence of a public record is admissible); *see also* Fed. R. Evid. 902(2)

(public document not sealed, but certified is admissible as evidence that is self-

authenticating).

Accordingly, it is undisputed that McCabe failed to file a notice of tort claim as

required by Idaho Code § 6-906. Failure to timely file a notice of tort claim bars McCabe

from pursuing state law claims against Gonzales. Thus, Gonzales's motion for summary

judgment with regard to McCabe's state law claims will be granted.


### MOTION TO HOLD PARTIES IN CONTEMPT (DKT. 41)

On March 20, 2015, McCabe filed a Motion for Order Holding Parties in

Contempt of This Court's Subpoena (Dkt. 41), seeking to hold Jerome City Police

Department and Jerome City Police Dispatch[10] in contempt for failing to fully respond to

two of the four requests made in a subpoena, served March 5, 2015. His motion also

attempts to raise issues of spoliation of evidence, as McCabe also asserts that the Police

---

[10] Despite the title to McCabe's Contempt Motion (Dkt. 41) seeking to have "parties" held in contempt, neither the Jerome City Police Department nor the Jerome City Police dispatch is a party to this action.

**MEMORANDUM DECISION AND ORDER - 22**

Department had an ongoing duty to preserve the computers onboard the patrol vehicles and failed to do so. Alternatively, McCabe requests leave to amend his complaint to add additional parties to this action if the Court denies his contempt motion. Gonzales alleges that, because the Jerome City Police Department[11] was not in possession of the information sought at the time it was served with the subpoena, it cannot be held in contempt. Similarly, Gonzales alleges the Department was under no such duty to preserve the documents. The Court agrees with Gonzales on each point.

## I. Contempt

A person or entity cannot not be held in contempt for failing to produce specified documents if the record reveals such documents were not in existence at the time the subpoena was served. *See Fremont Energy Corp. v. Seattle Post Intelligencer,* 688 F.2d 1285 (9th Cir.1982). The requests for production seek:

a) Any and all electronically stored metadata relative to officer Gonzales' patrol vehicle's onboard computer that references or relates to identifying the vehicle license plate of the vehicle plaintiff was a passenger of on December 31, 2011 and which is the focus on this complaint.

b) Any and all Police Radio Dispatch Transmissions and logs relative to December 31, 2011 and Officer Gonzales' identification of the license plate 2J44408 and/or the license plate of the vehicle plaintiff was a passenger in and was the focus on the traffic stop.

With regard to the first request for production at issue, McCabe requests the Court hold the Jerome Police Department in contempt for failing to produce metadata from the

---

[11] The second entity named in the motion, Jerome City Police Dispatch, is not in fact an entity. The Jerome Police Department is dispatched by a separate entity, Southern Idaho Regional Communication Center (SIRCOMM).

**MEMORANDUM DECISION AND ORDER - 23**

onboard computer from December 31, 2011, in former Jerome Police Officer Gonzales's patrol vehicle.

In response, the Chief of Police for the Jerome County Police Department, Dan Hall, explains the Jerome Police Department does not know whether the onboard computer exists or, if it does, where it may be. *See* Hall Aff. (Dkt. 36-17.) He further explains onboard computers are often replaced and transferred. *Id.* In addition, even if the computer could be located, it would be impossible to obtain its contents from December 31, 2011, because in early 2013, the hard drives for all onboard computers were wiped to undergo a software update. *Id.* Because Officer Gonzales was no longer employed with the Jerome Police Department at the time McCabe filed this action, the Department did not learn of this action until approximately late May or early June of 2014. The Department was not served with McCabe's subpoena until March 5, 2015.

Because the electronically stored metadata on Gonzales's onboard computer neither existed nor was possessed by the Jerome City Police Department at the time it received the subpoena, the Court finds the Department cannot be held in contempt.

With regard to the second request for production at issue, McCabe requests the Court hold the Jerome Police Department in contempt for failing to produce radio dispatch transmission of the December 31, 2011, traffic stop. However, the Jerome Police Department was never in possession of any radio transmissions relating to McCabe's arrest; a separate company, Southern Idaho Regional Communications Center (SIRCOMM), is responsible for dispatching law enforcement and retaining those records. Though not named by McCabe in this motion, SIRCOMM filed an objection. In its

objection, SIRCOMM explains that it is no longer in possession of the dispatch phone and radio audio recordings related to McCabe's traffic stop at the time the subpoena was served. If any such recordings existed, pursuant to SIRCOMM's records retention policy, such records were destroyed 365 days from the incident unless a record request was made. *See SIRCOMM Records Retention Policy* (Dkt. 46-2 at 5.)

The Court finds the dispatch phone and audio recordings related to McCabe's traffic stop, if any ever existed, were destroyed one year after the incident—nearly one and a half years before McCabe filed his complaint, and over two years before SIRCOMM became aware of the subpoena requesting the recordings. Because this information did not exist nor was it possessed by SIRCOMM at the time it became aware of the subpoena, neither Jerome Police Department nor SIRCOMM will be held in contempt for failure to produce.

## II. Duty to Preserve Evidence

A duty to preserve electronically stored information arises once one "knew or should have known that they were in possession of evidence relevant to pending litigation." *Leon v. IDX Systems Corp.,* 464 F.3d 951, 956 (9th Cir. 2006).

The information sought by McCabe was erased from the hard drive in the regular course of business to conduct a software update long before McCabe filed his complaint, and long before Jerome Police Department was made aware of McCabe's civil case against Gonzales. Accordingly, because the Jerome Police Department did not know nor should it have known the computers had potential relevance to pending litigation, it was

under no duty to preserve the onboard computers or the electronically stored information stored therein.[12]

## III. Leave to Amend Complaint to Add Additional Parties

Rule 16(b) provides that a scheduling order may be modified only upon a showing of "good cause." *See, e.g. Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607 (9th Cir. 1992). The "good cause" standard is primarily focused on the diligence of the party seeking the modification.  *Sadis v. Vailas*, 943 F.Supp.2d 1125, 1138 (D. Idaho 2013). The Ninth Circuit has stated that a "district court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'" *Johnson*, 975 F.2d at 609. Put simply, "good cause" means scheduling deadlines cannot be met despite a party's diligence. 6A Wright, Miller & Kane, *Federal Practice and Procedure* § 1522.1 at 231 (2d ed. 1990).

In this case, the Scheduling Order set October 25, 2014, as the deadline for amendment of pleadings and joinder of parties. McCabe's motion, filed March 20, 2015, comes over four months after the deadline. Other than requesting that amendment to the scheduling order be permitted contingent on the Court's denial of his contempt requests, McCabe sets forth no other reason to extend the deadline, nor does he specify the parties he desires to join in this action. Gonzales did not address this issue in her response.

McCabe offers no evidence to support why the deadline to join parties could not have been reasonably met. Based upon the record before the Court, there does not appear

---

[12] Further, McCabe does not contest the basic facts surrounding the traffic stop and arrest that may have been captured in part or in whole on the on-board computer or dispatch recording.

**MEMORANDUM DECISION AND ORDER - 26**

to be good cause supporting an amendment of the Court's order. Accordingly, Plaintiff's request to amend the Scheduling Order to allow him to amend his complaint and add additional parties will be denied.

## CONCLUSION

In sum, the Court will grant summary judgment in favor of Gonzales as to each of McCabe's Fourth Amendment claims brought pursuant to Section 1983. The Court further concludes Gonzales is entitled to summary judgment on McCabe's Idaho Constitutional claims because they fail as a matter of law. Moreover, the Court will grant summary judgment in favor of Gonzales on McCabe's Idaho state law claims due to McCabe's failure to comply with the requirements of the Idaho Tort Claims Act. Last, McCabe's motion for contempt will be denied because the Court cannot hold an entity in contempt for failure to produce information no longer in its possession and not subject to a preservation obligation or order.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) Defendant Janeece Gonzales's Motion for Summary Judgment (Dkt. 36) is

   **GRANTED**;

2) Plaintiff Melvin McCabe's Motion for Order Holding Parties in Contempt

   of This Court's Subpoena (Dkt. 41) is **DENIED**; and

3) Plaintiff Melvin McCabe's request to amend the scheduling order (Dkt. 41)

   is **DENIED**.

The Court will file a separate form of judgment in favor of Defendant.

Dated: **September 25, 2015**

Honorable Candy W. Dale
United States Magistrate Judge